David Bricker, Esq., ARDC No. 6316199
**THORNTON LAW FIRM, LLP**
2121 Avenue of the Stars, Suite 800
Los Angeles, California 90067
Telephone:    (310) 282-8676
Facsimile:    (310) 388-5316
dbricker@tenlaw.com

David R. Shoop, Esq. *(To be admitted Pro Hac Vice)*
Thomas S. Alch, Esq. *(To be admitted Pro Hac Vice)*
**SHOOP, A PROFESSIONAL LAW CORPORATION**
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Telephone: (310) 620-9533
Facsimile: (310) 620-6330
david.shoop@shooplaw.com
thomas.alch@shooplaw.com

Attorneys for Plaintiffs,
Steven and Alberta Dodson

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN DODSON AND ALBERTA DODSON, <br><br> Plaintiffs, <br><br> v. <br><br> ZIMMER US, INC.; BIOMET ORTHOPEDICS, LLC; and DOES 1 through 100, Inclusive, <br><br> Defendants. | CASE NO.: 3:25-cv-1032 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, STEVEN DODSON and ALBERTA DODSON, hereby complain and allege by and through their undersigned counsel, causes of action against the Defendants, and each of them, as follows:

///

**THE PARTIES**

1. At all times mentioned Plaintiff, STEVEN DODSON [hereinafter, "Plaintiff" or "Mr. Dodson"] was and is a citizen and resident of the County of Hamilton, State of Illinois, and is subject to the jurisdiction of this Court.

2. At all times mentioned Plaintiff, ALBERTA DODSON [hereinafter, "also referred to as "Mrs. Dodson"] was and is a citizen and resident of the County of Hamilton, State of Illinois, and is subject to the jurisdiction of this Court.

3. At all times herein mentioned, Defendant, ZIMMER US, INC. [hereinafter referred to as "ZIMMER"] was and is a corporation, duly organized under the laws of the State of Delaware, with its principal place of business in Warsaw, Indiana, and licensed to conduct business within the State of Illinois, and conducting business within the State of Illinois, and subject to the jurisdiction of this Court.

4. At all times herein mentioned, Defendant, BIOMET ORTHOPEDICS, LLC, [hereinafter "BIOMET"] was and is a corporation, duly organized under the laws of the State of Indiana, with its principal place of business in Warsaw, Indiana, and licensed to conduct business within the State of Illinois, and conducting business within the State of Illinois, and subject to the jurisdiction of this Court.

5. PLAINTIFF is ignorant regarding the true names, identities or capacities, whether individual, associate, corporate or otherwise of Defendants, DOES l through 100, inclusive, who therefore sue said Defendants by such fictitious names. When the true names, identities or capacities of such fictitiously-designated Defendants are ascertained, PLAINTIFF will ask leave of Court to amend the Complaint to insert said true names, identities and capacities, together with the proper charging allegations.

6. At all times herein mentioned, based upon information and belief, each of the Defendants was the agent, servant and/or employee of each of the remaining Defendants; and in doing or omitting to do the things herein alleged were acting within the course and scope of such agency,

///
///

service and/or employment with the permission and consent (implied, actual and/or constructive) of each principal; and each Defendant ratified the acts or omissions of each agent, servant and/or employee.

7. PLAINTIFF is informed and believes and thereon alleges that each of the Defendants sued herein as a DOE is responsible in some manner for the events and happenings herein referred to, thereby legally causing the injuries and damages to the PLAINTIFF as herein alleged.

8. PLAINTIFF is informed and believes and upon such information and belief alleges that at all times herein mentioned, Defendants and other Defendants named fictitiously, were the agents, servants, employees, joint-venturers, and co-partners of their said co-Defendants and, as such, were acting within the course and scope of such agency, service, partnership, venture, and employment at all times herein mentioned; that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other Defendant, as its agent, servant, employee, joint-venturer and partner. Further, each and every Defendant ratified the conduct of the other Defendants.

9. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants, ZIMMER US, INC.; BIOMET ORTHOPEDICS, LLC and DOES 1 through 100, inclusive, (collectively referred to as "DEFENDANTS" or "Defendants") were and now are engaged in the business of researching, designing, manufacturing, fabricating, modifying, testing, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, warning, providing warnings, providing instructions for use, conducting post-sale monitoring, conducting post-sale recalls, providing post-sale warnings, providing post-sale Dear Health Care Provider letters, and advertising the Biomet M2a metal-on-metal; hip ["Subject Product"].

///
///
///
///

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

11. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, including Plaintiff's receipt, surgical implantation of the Subject Product in Mt. Vernon, Jefferson County, Illinois, and suffered substantial injuries in Hamilton County, Illinois.

12. Defendants are subject to personal jurisdiction in this district because Plaintiff's claims arise from Defendants' actions in transacting business in the State of Illinois, and Defendants' commission of a tortious act in the State of Illinois.

13. Defendants are subject to personal jurisdiction in this district in accordance with Illinois' long-arm statute and federal constitutional requirements because they have both purposefully availed themselves of the laws and protections of the forum state of Illinois, and Plaintiff's claims complained of herein arise out of and/or relate to both Defendants' transaction of business within the State of Illinois, and Defendants' commission of tortious acts within the State of Illinois which were the direct cause of Plaintiff's injuries complained of herein.

**FACTUAL INTRODUCTION**

14. On or about April 18, 2006, Plaintiff, STEVEN DODSON, underwent right total hip replacement at Crossroads Community Hospital, in Mt. Vernon, Illinois. Plaintiff was implanted with Defendants' Biomet M2a metal-on-metal right-sided hip implant.

15. Defendants knew of the dangers of the Subject Product prior to Plaintiff's surgery to implant the Subject metal-on-metal Subject Product. Defendants have known for over a decade that metal-on-metal prosthesis are likely to cause metal debris or shavings in the body because the friction generated by metal-on-metal products results in the components creating friction that causes the metal

///

///

///

to be shaved off and deposit in the tissues of the patient, such as Mr. Dodson. However, Defendants intentionally and with wanton and willful disregard of persons who foreseeably might be harmed, recklessly and maliciously continued distributing, and selling and intentionally failed warn about or recall the Subject Product.

16. The Subject Product failed as evidenced by intractable pain, improper wear, metallosis, and the creation of a pseudotumor requiring that Plaintiff undergo surgery to remove and replace the failed and defective Subject Product.

17. On or about June 13, 2023, Plaintiff had surgery to remove and replace the Subject Product.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(By Plaintiff, STEVEN DODSON, Against ZIMMER US, INC.;**

**BIOMET ORTHOPEDICS, LLC; and Does 1 through 100, Inclusive)**

18. Plaintiff, Steven Dodson, refers to all preceding paragraphs, inclusive, and incorporates them as if set forth fully in this cause of action.

19. At all times herein mentioned, Defendants, and each of them, were and are engaged in the business of formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for and advertising the Subject Product.

20. Defendants, and each of them, had a duty to exercise due care in formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for and advertising the Subject Product, and Defendant and DOES 1 through 100, and each of them, breached said duty of due care.

///

21. At all times herein mentioned, Defendants, and each of them, were negligent and careless in formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for and advertising the Subject Product such that the Subject Product caused personal injuries to users, consumers, workers, bystanders, and others, including Mr. Dodson herein, while being used in a manner that was reasonably foreseeable, thereby rendering the Subject Product unsafe and dangerous for their intended and described usage.

22. Defendants, and each of them, knew, or in the exercise of due care should have known, that the failure to exercise due care in the formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for and advertising the Subject Product would cause, or would foreseeably result in, harm to intended and foreseeable users and bystanders including Mr. Dodson herein.

23. Specifically, and without limitation, Defendants, and each of them, were negligent in the formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for and advertising the Subject Product in that they failed to ensure that the Subject Product would be implanted safely and without harm to Mr. Dodson, and Defendants further failed to provide sufficient warnings and use instructions that would have served to prevent the subject injuries and damages described herein.

24. Defendants, and each of them, placed into the stream of commerce, marketed, sold and continued to distribute the Subject Product with full knowledge of their dangerous propensities referred to herein.  Defendants knew of the danger to the public, and to Mr. Dodson, yet negligently failed and refused to recall or retrofit the Subject Product thereby placing profit ahead of consumer health and safety, which very clearly demonstrates a callous and conscious disregard for public safety.

25.     A manufacturer/seller/distributor of a product is under a duty to exercise reasonable care in its design so that it can be safely used as intended by its buyer/consumer. This duty extends to all persons within the range of potential danger. At all times and places mentioned herein, Defendants, and each of them, owed a duty to Mr. Dodson to exercise reasonable care in its design and testing and instruction so that the Subject Product could be safely used as intended. Defendant and DOES 1 through 100, and each of them, were engaged in the business of designing, manufacturing, testing, warning, instructing, assembling, distributing, selling and otherwise placing into the stream of commerce, products, including the Subject Product, for sale and use by members of the general public, and as such Defendants, and each of them, owed the general public and Mr. Dodson a duty to produce, design, test, manufacture, assemble, distribute, sell and otherwise place into the stream of commerce products that are safe in their intended and foreseeable use, and free from defect.

26.     That at all times mentioned herein, Defendants, and each of them, engaged in the business of designing, manufacturing, assembling, testing, inspecting, distributing, promoting, warning, instructing, and selling for retail to members of the general public a certain product, the Subject Product, which were sold with knowledge that same would be purchased and used without inspection of defects.

27.     At all times and places mentioned herein, Defendants, and each of them, were engaged in the business of designing, marketing, testing, instructing and otherwise placing into the stream of commerce said Subject Product for sale and use by members of the general public, and as such defendants, and each of them, owed the general public a duty to design, market, promote and otherwise place into the stream of commerce products that are safe in their intended and foreseeable use.

28.     At all times and places mentioned herein, Defendants, and each of them, negligently produced, manufactured, assembled, designed, tested, warned, instructed, distributed, marketed and sold the Subject Product in a defective and dangerous condition as described at length, hereinabove.

///

///

///

29. Defendants, and each of them, breached their duty to Plaintiff by failing to, assemble, test, manufacture, provide Plaintiff's physicians with sufficient warnings and use instructions for, and otherwise fabricate the Subject Product so as to avoid its unsafe and hazardous operational characteristics and safety defects, amongst others.

30. As a direct and proximate result of the negligence of Defendants, and each of them, as set forth above, Mr. Dodson was severely injured, including but not limited to requiring general anesthesia surgery to remove and replace the defective and failed Subject Product, leg and suffered severe and permanent physical and emotional injuries.

31. As a direct and proximate result of the aforesaid conduct of Defendants, and each of them, as set forth above, Mr. Dodson has suffered permanent injuries to his person, body and health, all to his general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

32. As a direct and proximate result of the aforesaid conduct Defendants, and each of them, as set forth above, Mr. Dodson has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment. The true and exact amount of his medical expenses is currently in excess of $250,000.00.

33. As a further direct and proximate result of the negligence of Defendants, and each of them, as set forth above, Mr. Dodson will be required to and will seek additional future medical care and surgeries for treatment of her injuries and will thereby incur additional medical and other related expenses for care of her injuries. The true and exact amount his future medical expenses is unknown to Plaintiff at this time.

34. As a further direct and proximate result of the negligence of Defendants, and each of them, as set forth above, Mr. Dodson was rendered sore, disabled, and disordered, both internally and externally and suffered, among other things, general anesthesia surgery to remove and replace the defective, failed Subject Product, emotional distress, pain, discomfort, and anxiety. The exact nature and extent of said injuries is not yet known to the Plaintiff, who is informed and believes that the injuries are permanent.

///

35. Prior to the occurrence of this accident, Mr. Dodson was an able-bodied individual, but since said accident Plaintiff is informed and believes, and thereon alleges, that Mr. Dodson will be permanently visually incapacitated to a significant extent and unable to perform certain types of work activities, household services and other activities, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of Court to show the total amount of Mr. Dodson's loss of earning capacity.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY

**(By Plaintiff, STEVEN DODSON Against ZIMMER US, INC.;**

**BIOMET ORTHOPEDICS, LLC, and Does 1 through 100, Inclusive)**

36. Plaintiff, Steven Dodson, refers to all preceding paragraphs, inclusive, and incorporates them as if set forth in full in this cause of action.

37. Defendants, and each of them, knew and intended that the Subject Product would be used without inspection for defects therein or in any of its component parts and without knowledge of the hazards involved in such use.

38. Plaintiff is informed and believe, and thereupon allege, that at all times herein mentioned, that Defendants, and each of them, were engaged in the business of, amongst other things, formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for and advertising the Subject Product referenced hereinabove and, as such, are strictly liable in tort for the defects and deficiencies herein discussed which caused injury to Mr. Dodson as alleged herein.

39. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, the Subject Product were defective and dangerous, both in warning, and manufacture thereby rendering the Subject Product unsafe for their intended use and that the defects were a direct and proximate cause of injury to Mr. Dodson herein.

///

40. The product defects existed in the Subject Product at the time they left the possession of the Defendants. Said Subject Product did, in fact, cause personal injuries, including those described to Mr. Dodson herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for their intended use.

41. At all times mentioned herein, the foreseeable use of the Subject Product involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, including Mr. Dodson herein, but which danger was known or knowable to Defendants, who failed to adequately warn and provide use appropriate and sufficient use instructions regarding the Subject Product. Defendants knew or should have known about the serious defects and risks associated with the Subject Product prior to the time of distribution, sale and Mr. Dodson's injuries, including the actual level of risk and failure to communicate adverse events similar to the injuries suffered by Mr. Dodson.

42. At the times and places mentioned herein, Defendants and each of them, knew or should have known at the time said Subject Product left Defendants' possession, that the Subject Product were defective in warning and manufacture, that they did not meet users' and ordinary consumers' reasonable expectations for safety when used in a reasonable foreseeable manner, and were dangerous, defective, unfit and unsafe for its intended use and that said conditions were likely to fail catastrophically as described at length hereinabove, when used in a foreseeable manner, and not properly and adequately tested or inspected.

43. Plaintiff is informed and believes, and upon such information and belief allege that, the Subject Product had associated deficits, risks and defects, its lack of sufficient warnings and/or use instructions, and those additional items enumerated hereinabove.

44. These associated deficits, risks and defects were known or knowable by Defendants, and each of them via the use and employ of scientific knowledge available at the time of manufacture, testing and distribution of the Subject Product.

45. Plaintiff herein alleges that the associated risks, deficits, and defects of the Subject Product presented a substantial danger to users of the product and that ordinary consumers would not have recognized or otherwise anticipated these associated risks.

///

46. Defendant, and each of them, further failed to warn of the potential risks and hazards associated with the Subject Product when used in a way that was reasonably foreseeable to Defendants, and each of them. Any warnings provided were inadequate, defective and inappropriate. Moreover, this lack of sufficient use instructions and/or warnings was a substantial factor in causing Mr. Dodson's injuries and damages.

47. At the times and places mentioned herein, Defendants, and each of them, knew or should have known at the time the Subject Product left Defendants' possession, that said Subject Product were defective in their warnings and manufacture, and were likely to perform unsafely in a manner unanticipated by a prudent user, and having such knowledge, Defendants, and each of them, should have used reasonable care to warn, or give adequate use instructions and warning of the Subject Product' defects and deficits in design and operational characteristics to those intending to use said Subject Product in the manner in which they were intended to be used.

48. At all times and places mentioned herein, Defendants, and each of them, failed to use reasonable care to warn, give adequate use instruction or warning to provide facts describing the Subject Product' dangerous propensities to those whom they could expect to use the product or be endangered by its probable use, and such deficits and defects as illustrated hereinabove were a substantial factor in causing Mr. Dodson's harm. The foreseeable risks of catastrophic failure associated with the Subject Product outweigh the benefits associated with the Subject Product.

49. Defendants, and each of them, knew of the dangers of the Subject Product prior to Mr. Dodson's surgeries to implant the Subject metal-on-metal Subject Product. Defendants have known for over a decade that metal-on-metal prosthesis are likely to cause metal debris or shavings in the body because the friction generated by metal-on-metal products results in the components creating friction that causes the metal to be shaved off and deposit in the tissues of the patient, such as Mr. Dodson.  Prior to Mr. Dodson being implanted with the Subject Product, many manufacturers and distributors had either recalled, or stopped producing and distributing metal-on-metal knees and hips because of the exact injuries later caused to Mr. Dodson, i.e., metal-on-metal friction causing metal

///

///

50. debris/shavings to build up and deposit in patients' tissues. However, Defendants intentionally and with wanton and willful disregard of persons who foreseeably might be harmed, recklessly and maliciously continued distributing, and selling and intentionally failed warn about or recall the Subject Product.

51. As a result of his injuries, Mr. Dodson has had to undergo general anesthesia surgery to remove and replace the Subject Product.

52. As a direct and proximate result of the negligence of Defendants, and each of them, as set forth above, Mr. Dodson was severely injured, including but not limited to requiring general anesthesia surgery to remove and replace the defective and failed Subject Product, leg and suffered severe and permanent physical and emotional injuries.

53. As a direct and proximate result of the aforesaid conduct of Defendants, and each of them, as set forth above, Mr. Dodson has suffered permanent injuries to his person, body and health, all to his general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

54. As a direct and proximate result of the aforesaid conduct Defendants, and each of them, as set forth above, Mr. Dodson has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment. The true and exact amount of his medical expenses is currently in excess of $250,000.00.

55. As a further direct and proximate result of the negligence of Defendants, and each of them, as set forth above, Mr. Dodson will be required to and will seek additional future medical care and surgeries for treatment of her injuries and will thereby incur additional medical and other related expenses for care of her injuries. The true and exact amount his future medical expenses is unknown to Plaintiff at this time.

56. As a further direct and proximate result of the negligence of Defendants, and each of them, as set forth above, Mr. Dodson was rendered sore, disabled, and disordered, both internally and externally and suffered, among other things, general anesthesia surgery to remove and replace the

///

///

defective, failed Subject Product, emotional distress, pain, discomfort, and anxiety. The exact nature and extent of said injuries is not yet known to the Plaintiff, who is informed and believes that the injuries are permanent.

57. Prior to the occurrence of this accident, Mr. Dodson was an able-bodied individual, but since said accident Plaintiff is informed and believes, and thereon alleges, that Mr. Dodson will be permanently visually incapacitated to a significant extent and unable to perform certain types of work activities, household services and other activities, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of Court to show the total amount of Mr. Dodson's loss of earning capacity.

## THIRD CAUSE OF ACTION

## LOSS OF CONSORTIUM

**(By Plaintiff, ALBERTA DODSON, Against ZIMMER US, INC.;**

**BIOMET ORTHOPEDICS, LLC, and Does 1 through 100, Inclusive)**

58. Plaintiff, Alberta Dodson, refers to all preceding paragraphs, inclusive, and incorporates them as set forth in full in this cause of action.

59. At all times herein mentioned, Alberta Dodson and Steven Dodson, were married and are husband and wife.

60. As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, and the resultant injuries to Plaintiff, Steven Dodson, Plaintiff, Alberta Dodson, has suffered and is reasonably certain to suffer in the future, the loss of love, comfort, companionship, comfort, affection, society, solace, moral support, and physical assistance in the operation and maintenance of the home, causing damage in excess of the jurisdiction of the above-entitled court.

///
///
///
///
///
///

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment and relief against the Defendants, and each of them, as follows:

1. For general damages in an amount within the jurisdictional limits of this court;
2. Past, future medical and related items of expense, according to proof;
3. For loss of future earnings and earning capacity, according to proof;
4. For prejudgment interest;
5. For costs of suit and attorney fees, if awarded by the court, incurred herein; and
6. For such other and further relief as to the Court appears just and proper.

DATED: May 22, 2025

**THORNTON LAW FIRM, LLP**

By: _____
David Bricker, Esq.
Attorneys for Plaintiffs,
Steven and Alberta Dodson

**SHOOP | A PROFESSIONAL LAW CORPORATION**

David R. Shoop, Esq.
Thomas S. Alch, Esq.
Attorneys for Plaintiffs,
Steven and Alberta Dodson

**DEMAND FOR JURY TRIAL**

Plaintiffs, Steven and Alberta Dodson, hereby demand trial by jury as to all issues so triable.

DATED: May 22, 2025

**THORNTON LAW FIRM, LLP**

By: _____
David Bricker, Esq.
Attorneys for Plaintiffs,
Steven and Alberta Dodson

**SHOOP | A PROFESSIONAL LAW CORPORATION**

David R. Shoop, Esq.
Thomas S. Alch, Esq.
Attorneys for Plaintiffs,
Steven and Alberta Dodson